IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAROL TACCINO, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-22-226 |
| DAWN LINDSEY, et al., | * | |
| Defendants. | * | |

\*\*\*
## MEMORANDUM OPINION

THIS MATTER is before the Court for consideration of Plaintiffs Carol and William Taccino's Complaint and Motion to Proceed in Forma Pauperis (ECF Nos. 1, 2). The Motion is ripe for disposition and no hearing is necessary. Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the Motion but will otherwise dismiss the Complaint.

### I.   BACKGROUND

**A.   Factual Background**

On March 15, 2018, Plaintiff Carol Taccino was involved in a car accident in Cumberland, Maryland and was later criminally charged for obstruction of justice and making a false statement to the police for her actions following the crash. (Statement Charges at 3, ECF No. 1-1).[1] Officer Joseph Ashby responded to the scene of the crash to

---

[1] The electronic document accessible at ECF No. 1-1 contains multiple documents combined into one Portable Document Format ("PDF") file. References to exhibit page numbers refer to the pagination of the combined PDF document as it exists on the Court's Case Management/Electronic Case Files ("CM/ECF") system.

investigate and collect information from Mrs. Taccino and the other driver, Alyssha Rodrigues. (Id.). Ashby determined that Mrs. Taccino "was driving through the parking lot across the parking spaces and not in the travel lanes of the parking lot." (Id.). Ashby therefore concluded that Mrs. Taccino was at fault and cited her for negligent driving. (Id.).

After she received the citation, Mrs. Taccino called Sgt. E. Bonner several times "demanding that the other driver be charged and that her citation be voided." (Id.). Bonner told Mrs. Taccino that the investigation was complete and that he agreed with Ashby's conclusions, i.e., that Mrs. Taccino was at fault. (Id.). On March 17, 2018, Mrs. Taccino called Lt. J. Burt claiming that Rodrigues did not have insurance at the time of the accident. (Id.). Burt contacted Rodrigues' insurance company, verified that her insurance was valid, and informed Mrs. Taccino that the insurance was active. (Id.).

On April 5, 2018, Rodrigues came to the police station after receiving notice that she needed to pick up a criminal summons. (Id. at 3). An officer at the station reviewed the application for criminal summons and discovered that Mrs. Taccino had filed it on March 29, 2018, after the crash had been investigated and after Burt told her that Rodrigues had valid insurance. In her application, Mrs. Taccino stated that Rodrigues "failed to provide legal valid proof of insurance." (Id.).

After investigating the criminal summons application, Officer Robert Martin contacted Rodrigues' insurance yet another time to confirm that her insurance was valid at the time of the accident. (Id.). On April 5, 2018, Martin found that "it [was] evident that Carol Taccino fraudulently filed for charges through the District Court on March 29, 2018." (Id.). Martin arrested Mrs. Taccino and charged her with making a false statement to the

police and obstruction of justice. (Id. at 1). On January 23, 2019, a jury in the Circuit Court for Allegany County found Mrs. Taccino guilty of both charges and she received a sixty-day suspended sentence. See State v. Taccino, No. C-01-CR-18-000460 (Cir.Ct.Md. 2018).

**B.      Procedural History**

Self-represented Plaintiffs Carol and William Taccino filed this lawsuit on January 31, 2022. (ECF No. 1). The claims are at times difficult to parse. The Taccinos first identify Defendants Ashby, Martin, and the City of Cumberland and allege: false arrest against Martin (Count I); conspiracy against Martin (Count II); use of unnecessary excessive force under the Fourth Amendment against Ashby (Count III); conspiracy in violation of their Sixth Amendment Rights against Martin (Count IV); and conspiracy against Ashby (Count V). (Compl. ¶¶ 13–19).

The Taccinos then identify Defendants the "Allegany County Local Government," State's Attorney Michael O. Twigg, Assistant State's Attorney Jacqueline Phillips, and Allegany County Attorney T. Lee Beeman, and allege: conspiracy against Twigg (Count VI);[2] violation of their Sixth Amendment Rights against Twigg (Count VII); conspiracy against Phillips (Count VIII); violation of their Fifth and Sixth Amendment Rights against Phillips (Count IX); conspiracy against Beeman (Count X); obstruction of justice against Beeman (Count XI); and violation of the Maryland Code of Ethics against Twigg, Phillips, and Beeman (Count XII). (Id. ¶¶ 20–26).

---

[2] The Taccinos restart their claims at "Count I" for the various categories of Defendants identified. (See Compl. ¶ 20). For clarity, the Court has continued the numbering.

3

The Taccinos next allege claims against Jennifer Clem, whom they identify as "a commissioner of the District Court of Maryland," for: conspiracy (Count XIII); fraud (Count XIV);[3] obstruction of justice (Count XV); and violation of their Sixth Amendment Rights (Count XVI). (Compl. ¶¶ 27–30).

Next, the Taccinos allege claims against Dawn Lindsey, the Clerk of the Court for the Circuit Court for Allegany County, for: conspiracy (Count XVII); obstruction of justice (Count XVIII); and violation of their Sixth Amendment Rights (Count XIX). (Id. ¶¶ 31–33).

Finally, the Taccinos assert claims against the Honorable W. Timothy Finan, retired Judge for the Circuit Court for Allegany County, and allege: conspiracy (Count XX); violations of their Sixth Amendment Rights (Count XXI); and violations of the Maryland Courts and Judicial Proceedings and Rules Article (Count XXII). (Id. ¶¶ 34–36).

The Taccinos seek compensatory damages and punitive damages. (Id. ¶¶ 37–53). Simultaneous with their Complaint, the Taccinos filed a Motion to Proceed in Forma Pauperis (ECF No. 2).

## II. DISCUSSION

**A.  Standard of Review**

28 U.S.C. § 1915(a)(1) permits indigent litigants to commence an action in this Court without prepaying the filing fee. To guard against possible abuses of this privilege,

---

[3] Mrs. Taccino styles this claim as one for "Falsifying Court Documents." (Compl. ¶ 28). Liberally construing the pro se Complaint, the Court will consider this claim as one for fraud. See Erickson v. Pardus, 550 U.S. 544, 570 (2007).

the statute requires dismissal of any claim that is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i), (ii). The standard for determining whether a plaintiff has failed to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003). A plaintiff fails to state a claim in this context where the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This Court is mindful, however, of its obligation to liberally construe self-represented pleadings, such as the instant Complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). In evaluating such a complaint, the factual allegations are assumed to be true. Id. (citing Twombly, 550 U.S. at 555–56).

Liberal construction does not, however, permit this Court to ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Though [self-represented] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them."). In making this determination, "[t]he district court need not look beyond the complaint's allegations . . . . It must, however, hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally." White v. White, 886 F.2d 721, 722–23 (4th Cir. 1989).

5

**B.**     <u>Analysis</u>

    **1.**     **William Taccino's Claims**

First, the Court finds that Plaintiff William Taccino does not have standing to join Mrs. Taccino's Complaint. "[A]t an irreducible minimum, Art[icle] III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and further, "that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." <u>Valley Forge Christian Coll. v. Am. United for Separation of Church & State</u>, 454 U.S. 464, 472 (1982) (citations and internal quotation marks omitted); <u>see also</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559–60 (1992). To demonstrate constitutional standing, a plaintiff must establish three elements: (1) that he or she "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical'"; (2) that there is a "causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." <u>Lujan</u>, 504 U.S. at 560–61 (cleaned up). The injury need not be actualized. <u>Davis v. Fed. Election Comm'n</u>, 554 U.S. 724, 734 (2008). A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct. <u>Id.</u>

Here, Mr. Taccino has failed to demonstrate that he has standing to bring this lawsuit. He was not party to any of the factual allegations underlying the Complaint.

6

Moreover, the Complaint does not include any allegations that Mr. Taccino suffered any injury as a result of the Defendants' actions. (See generally Compl.). Thus, the Court finds that Mr. Taccino has not demonstrated that he has standing in this action. Accordingly, the Court will dismiss all claims raised on his behalf.

### 2. Carol Taccino's Claims

Carol Taccino raises multiple claims for conspiracy, false arrest, malicious prosecution, excessive force in violation of the Fourth Amendment, obstruction of justice, violations of the Fifth and Sixth Amendment, violations of the Code of Ethics, and violations of the Maryland Courts and Judicial Proceedings Article against Defendants. The claims occasionally overlap. The Court will address them in the order necessary for clarity purposes.

#### a. Conspiracy (Counts II, IV, V, VI, VIII, X, XIII, XVII, XX)

Mrs. Taccino alleges claims for conspiracy against all Defendants. (Counts II, IV, V, VI, VIII, X, XIII, XVII, XX). At bottom, the Court finds that the claims are conclusory, frivolous, and do not state a claim for which relief may be granted. The Court will therefore dismiss Counts II, IV, V, VI, VIII, X, XIII, XVII, and XX.

To establish a civil conspiracy under 42 U.S.C. § 1983, a plaintiff must present evidence that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. See Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). "An essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators." Fuller v. Shearin, No. WMN-12-43, 2012 WL

4378170, at *9 (D.Md. Sept. 24, 2012), aff'd, 521 F.App'x 181 (4th Cir. 2013); accord Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1006–07 (4th Cir. 1987). Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy. See Murdaugh Volkswagen v. First Nat'l Bank, 639 F.2d 1073, 1075–76 (4th Cir. 1981). The complaint must allege facts establishing that defendants shared a "unity of purpose or a common design" to injure the plaintiff. Am. Tobacco Co. v. United States, 328 U.S. 781, 809–10 (1946). "A conspiracy may . . . 'be inferred from the things actually done . . . .'" Murdaugh, 639 F.2d at 1075 (quoting Overseas Motors, Inc. v. Imported Motors Ltd., 375 F.Supp 499, 531 (E.D.Mich. 1974), aff'd, 519 F.2d 119 (6th Cir. 1975)). Circumstantial evidence consisting of "coincidence piled on coincidence" is insufficient where the "[p]roof of collusion is simply too attenuated" to conclude there was a conspiracy to violate the law. Id.

Here, Mrs. Taccino's allegations of conspiracy are conclusory and unsupported by any facts tending to show collusion or unity of purpose:

- "Officer Robert Martin . . . conspired with CPD Officer Joseph Ashby . . . to arrest Plaintiff Carol Taccino . . . ." (Compl. ¶ 14).
- "Defendant Michael O. Twigg, State's Attorney . . . , conspired with all the Defendants in this case, especially Assistant State's Attorney Jacqueline Phillips to falsely, maliciously and frivolously prosecute Plaintiff Carol Taccino." (Id. ¶ 20).
- "Jacqueline Phillips . . . at various times from April 5, 2018 – January 23, 2019 conspired with all the Defendants to maliciously and frivolously prosecute Plaintiff Carol Taccino at the Jan. 23, 2019 trial." (Id. ¶ 22).
- "T. Lee Beeman, County Attorney since February 2020, . . . conspired with Defendants Twigg and Phillips to cover up their crimes and/or violations by sending Plaintiffs

8

> a response to their local government tort claims act informing them that Defendants Twigg and Phillips are not county employees." (Id. ¶ 24).
> - "Clem . . . conspired with CPD Officer Robert Martin claiming that Plaintiff Carol Taccino made a false statement to her on March 29, 2018 (which was never proven) and Officer Martin used this claim as a [guise] to falsely charge Plaintiff." (Id. ¶ 27).
> - "Defendant Dawn Lindsey . . . conspired with all the Defendants and issued several invalid, erroneous and unserviceable subpoenas . . . ." (Id. ¶ 31).
> - "Defendant W. Timothy Finan . . . conspire[d] with all Defendants and held the jury trial . . . ." (Id. ¶ 34).[4]

Mrs. Taccino does not explain how these Defendants conspired with one another or otherwise assert any facts on which to base her allegation that they shared a unity of purpose. To the extent she alleges that Defendants had the common design to arrest and prosecute her, that common design was not unlawful because Mrs. Taccino was found guilty beyond a reasonable doubt.[5] Accordingly, the Court will dismiss Counts II, IV, V, VI, VIII, X, XIII, XVII, and XX as to all Defendants.

### b.     False Arrest and Malicious Prosecution (Counts I, VI, VIII, IX)

Mrs. Taccino alleges claims for false arrest against Ashby (Count I) and malicious prosecution against Phillips and Twigg (Counts VI, VIII, IX).[6] As Mrs. Taccino was

---

[4] Mrs. Taccino includes other conspiracy allegations that do not identify more than one person in the alleged conspiracy. (See Compl. ¶¶ 16, 18) (alleging separately that Martin failed to appear at her trial and Ashby gave testimony that was res judicatus).

[5] Mrs. Taccino's conspiracy claims also fail because she does not have any support for her contention that her constitutional rights were violated. See infra (rejecting Mrs. Taccino's claims for violations of her Fourth, Fifth, and Sixth Amendment rights).

[6] Mrs. Taccino styles some of her malicious prosecution claims as claims for conspiracy and violations of her Fifth and Sixth Amendment rights. (See Counts VI, VIII, IX). Liberally construing Mrs. Taccino's pro se Complaint, the Court will also address her claims for malicious prosecution, to the extent they are raised in her conspiracy claims.

convicted for her crimes, she fails to state a claim. The Court will thus dismiss Counts I, VI, VIII, and IX.

"[U]nder Maryland law for a plaintiff to succeed on a false arrest . . . or malicious prosecution claim, he must establish the absence of probable cause for his detention or prosecution." Ghazzaoui v. Anne Arundel Cnty., 659 F.App'x 731, 733 (4th Cir. 2016). A false arrest claim under 42 U.S.C. § 1983 requires a plaintiff show "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Id. (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012)). Finally, "[u]nder Maryland law, a conviction determines conclusively the existence of probable cause, regardless of whether the judgment is later reversed in a subsequent proceeding." Id. (quoting Asuncion v. City of Gaithersburg, No. 95-1159, 1996 WL 1842, at *2 (4th Cir. Jan. 3, 1996)). There is an exception, however, where a conviction is "obtained by fraud, perjury or other corrupt means." Id. at 734 (quoting Zablonsky v. Perkins, 187 A.2d 314, 316 (1963)).

Mrs. Taccino was convicted of her criminal charges by a jury in the Circuit Court for Allegany County. Thus, her conviction establishes as a matter of law the existence of probable cause. See id. at 733–34. Further, she does not include any substantive allegations that her arrest or prosecution were carried out through fraudulent or corrupt means. Accordingly, Mrs. Taccino fails to state a claim for false arrest or malicious prosecution. The Court will dismiss Counts I, VI, VIII, and IX.

### c. Fourth Amendment Violation (Count III)

In Count III, Mrs. Taccino asserts a claim against Ashby for violation of her Fourth Amendment rights. Specifically, she alleges that Ashby "use[d] unnecessary force, . . . without stating the charges, mirandizing her or providing her with a copy of the arrest warrant," and that he "arrested her without probable cause." (Compl. ¶ 15); see Miranda v. Arizona, 384 U.S. 436 (1966). At bottom, the Court finds that Mrs. Taccino has failed to state a claim under the Fourth Amendment and will dismiss Count III.

"A claim that a police officer used excessive force in making an arrest . . . 'is properly analyzed under the Fourth Amendment's "objective reasonableness" standard.'" Dorsey v. Sokoloff, 381 F.Supp.3d 521, 531 (D.Md. 2019) (quoting Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 899 (4th Cir. 2006)), aff'd, No. 19-1671, 2021 WL 5275535 (4th Cir. Nov. 12, 2021). In determining whether the use of force is objectively reasonable, the Court typically assesses three factors: "(1) the severity of the crime at issue, (2) the extent to which a suspect 'poses an immediate threat to the safety of the officers or others,' and (3) the extent to which a suspect 'is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Wilson v. Prince George's Cnty., 893 F.3d 213, 219–20 (4th Cir. 2018)).

First, Mrs. Taccino has not pleaded sufficient facts to demonstrate that Ashby used excessive force during her arrest. "[T]he right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 192 (4th Cir. 2018) (Shedd, J., concurring) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Here, Ashby had probable cause to arrest her for making a false statement because he knew Burt had confirmed that Rodrigues had

11

insurance at the time of the accident and informed Mrs. Taccino of that fact before Mrs. Taccino filed her application for criminal charges. (See Statement Charges at 3). Moreover, as stated, Mrs. Taccino does not allege any facts that suggest Ashby used excessive force during her arrest. The mere fact that Ashby handcuffed her, without more, is insufficient to state a claim for excessive force.

Next, Mrs. Taccino's allegation that she did not receive a copy of her arrest warrant is without merit. Indeed, Mrs. Taccino attached a copy of her arrest warrant to her Complaint, which she signed in three separate locations on April 5, 2018, the date of her arrest. (Arrest Warrant at 2, ECF No. 1-1).[7] The warrant further states, "I have read or have had read to me the contents of the above notice and acknowledge receipt of a copy thereof." (Id.). One of Mrs. Taccino's three signatures immediately follows that statement. This evidence negates Mrs. Taccino's bare allegation. See Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001) (holding that where properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail").

Finally, Mrs. Taccino's allegations regarding Miranda warnings do not state a claim for which relief may be granted. She alleges only that Ashby did not Mirandize her before he arrested her. (See Compl. ¶ 15). Of course, Miranda warnings must be given before a custodial interrogation. See 384 U.S. at 444. Mrs. Taccino does not, however, provide any facts to support that she should have been read her Miranda rights before her arrest. See United States v. Clenney, 631 F.3d 658, 668 (4th Cir. 2011) (explaining that Miranda

---

[7] A copy of the Arrest Warrant is located at pages 10–11 of ECF No. 1-1, using the pagination provided in CM/ECF.

"requires four warnings before law enforcement officers commence a custodial interrogation" (emphasis added)); accord United States v. Hayes, No. RDB-14-0577, 2015 WL 9302930, at *1 (D.Md. Dec. 22, 2015) ("Miranda warnings are required when a subject is interrogated while in custody."), aff'd, 714 F.App'x 266 (4th Cir. 2018); Golden v. City of Graham Cnty, No. 1:14CV706, 2015 WL 6692113, at *2 (M.D.N.C. Nov. 2, 2015) ("There is no requirement that Miranda rights be read prior to an arrest, only prior to a custodial interrogation."). Accordingly, the Court finds that Mrs. Taccino has failed to support her allegations that Ashby used excessive force or otherwise violated her Fourth Amendment rights during her arrest. The Court will dismiss Count III.

### d. Claims Against Judge Finan (Counts XXI, XXII)

Mrs. Taccino alleges claims for violation of her Sixth Amendment Rights and the Maryland Courts and Judicial Proceedings Article against Judge Finan.[8] (Counts XXI, XXII). At bottom, Mrs. Taccino's claims are barred by the doctrine of judicial immunity. Thus, the Court will dismiss Counts XXI and XXII.

"The doctrine of judicial immunity shields judges from monetary claims against them in both their official and individual capacities." Cochran v. Mahoney, No. JKB-21-2313, 2021 WL 4503065, at *1 (D.Md. Sept. 29, 2021); accord Forrester v. White, 484 U.S. 219, 226–27 (1988) ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits."). Judicial

---

[8] Mrs. Taccino's claim of conspiracy against Judge Finan is addressed above. (See supra Section II.B.2.a; Count XX).

immunity is absolute; it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely. Cochran, 2021 WL 4503065, at *1. Moreover, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. 349, 355–56 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)); accord Dean v. Shirer, 547 F.2d 227, 231 (4th Cir. 1976) (stating that a judge may not be attacked for exercising judicial authority even if done improperly).

Here, Mrs. Taccino seeks to hold Judge Finan liable for conduct undertaken during her criminal jury trial. Such a claim is "impermissible" given the Judge's absolute immunity. Cochran, 2021 WL 4503065, at *2. Mrs. Taccino's claims, therefore, "fail[] to provide any information that might lead to a reasonable conclusion that some plausible cause of action has accrued" on her behalf. Id. The Court will accordingly dismiss Counts XXI and XXII.

### e. Claims Against Twigg and Phillips (Counts VII, IX, XII)

Mrs. Taccino alleges claims against Twigg and Phillips, members of the State's Attorney's Office in Allegany County, for violating her Fifth and Sixth Amendment rights (Counts VII, IX) and the Maryland Code of Ethics (Count XII).[9] At bottom, Twigg and Phillips are immune from Mrs. Taccino's claims and the Court will dismiss Counts VII, IX, and XII.

---

[9] The Court has already addressed Mrs. Taccino's conspiracy claims against Twigg and Phillips. (See supra Section II.B.2.a; Counts VI, VIII, X).

State's Attorneys have quasi-judicial immunity derived from the immunity of judges when performing prosecutorial functions. See Imbler v. Pachtman, 424 U.S. 409, 420 (1976). "[P]rosecutors enjoy absolute immunity for conduct 'intimately associated with the judicial phase of the criminal process.'" Lyles v. Sparks, 79 F.3d 372, 376–77 (4th Cir. 1996) (quoting Imbler, 424 U.S. at 430). The purpose of absolute immunity in this context is to "prevent[] vexatious litigation from deflecting prosecutors' energies and shading their judgment." Id. at 376–77. "The focus of immunity analysis, therefore, is 'on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.'" Id. at 377 (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993)). As the decision as to "whether and when to prosecute" is "quasi-judicial," Twigg and Phillips have absolute immunity and the Court will dismiss Counts VII, IX, and XII. See id. at 376–77.

### f. Claims Against Clem and Lindsey (Counts XIV, XVI, XIX)

Mrs. Taccino alleges claims against Clem and Lindsey, administrative employees in Allegany County for the District Court and Circuit Court, respectively. Specifically, Mrs. Taccino alleges a claim against Clem for fraud (Count XIV)[10] and alleges claims against Clem and Lindsey for violation of her Sixth Amendment rights (Counts XVI, XIX).[11] At bottom, the Court will dismiss the claims.

---

[10] As explained above, Mrs. Taccino pleads this claim as one for "falsifying court documents." (Compl. ¶ 28). As that is not a cognizable claim, and as Mrs. Taccino is self-represented, the Court will construe Count XIV as one for fraud.

[11] The Court has already addressed Mrs. Taccino's conspiracy claims against Clem and Lindsey. (See supra Section II.B.2.a; Counts XIII, XVII).

When "the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud, . . . Rule 9(b) requires that 'the circumstances constituting fraud be stated with particularity.'" Haley v. Corcoran, 659 F.Supp.2d 714, 721 (D.Md. 2009) (first quoting Adams v. NVR Homes, Inc., 193 F.R.D. 243, 250 (D.Md. 2000); then quoting Fed.R.Civ.P. 9(b)). "The circumstances required to be pled with particularity are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Id. (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)).

Additionally, under the Sixth Amendment, the accused has the right "to be confronted with the witnesses against him" in all criminal prosecutions. Crawford v. Washington, 541 U.S. 36, 42 (2004). The Sixth Amendment guarantees a criminal defendant's right to confront any individuals "'who bear testimony' against him." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (quoting Crawford, 541 U.S. at 51). Under the Sixth Amendment, "[a] witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Id.

First, Mrs. Taccino does not include sufficient details regarding Clem's allegedly fraudulent actions to satisfy the requirements of Rule 9(b). In her Complaint, Mrs. Taccino alleges that Clem "testified that she redeveloped and added to the number of charges" against Mrs. Taccino. (Compl. ¶ 28). Therefore, Mrs. Taccino asserts, Clem falsified court documents and "committed the crime she accused Ms. Taccino of." (Id.). Mrs. Taccino

16

does not allege with particularity when or where the alleged fraud took place, or the content of the alleged fraud. To the extent Clem testified falsely at Mrs. Taccino's trial, Mrs. Taccino could have obtained that testimony and cited the time, place, and content of those statements. She did not. Thus, Mrs. Taccino's allegations do not satisfy the heightened pleading standards of Rule 9(b), and the Court will dismiss Count XIV.

Mrs. Taccino's claims for violation of her Sixth Amendment rights also do not state a claim for which relief may be granted. (See Counts XVI, XIX). Mrs. Taccino argues that Clem failed to appear at trial, which affected Mrs. Taccino's capacity to confront the witnesses against her. (Compl. ¶ 30). But Mrs. Taccino does not allege that Clem somehow impermissibly offered testimony at trial through another means despite her failure to appear. Thus, it is unclear how Mrs. Taccino's right to confront witnesses against her could have been violated.

Additionally, Mrs. Taccino alleges that Lindsey violated her Sixth Amendment rights by issuing "unlawful subpoenas." (Compl. ¶ 33). Specifically, she contends that Lindsey issued subpoenas to Mr. Taccino to testify "against his wife at trial," and this act somehow denied Mrs. Taccino her "right to have compulsory process for obtaining witnesses in her favor." (Id.). Mrs. Taccino does not explain how she was impeded from having witnesses appear at trial in her favor. Further, she does not indicate whether she served a subpoena on Clem or Lindsey requiring their attendance at trial. To the extent she did, her source of redress for any failure to appear would have been before the trial court. Moreover, the fact that her husband was served with a subpoena does not establish or even suggest that Mrs. Taccino was unable to obtain witnesses in her favor. Thus, Mrs.

Taccino's claims that Clem and Lindsey violated her Sixth Amendment rights are without merit.

Accordingly, the Court will dismiss Mrs. Taccino's fraud claim against Clem (Count XIV) and her claims for violation of her Sixth Amendment rights against Clem and Lindsey (Counts XVI, XIX).[12]

### g. Claims Against the City of Cumberland and Allegany County

Finally, Mrs. Taccino identifies two municipalities, the City of Cumberland and Allegany County, as Defendants in the Complaint. (See Compl. ¶¶ 12–26). She does not specifically raise any claims against those Defendants, but they are nonetheless included in the headings above several counts (See id.; Counts I–XII). The Court will dismiss all claims against the municipalities.

To prevail against a municipality for alleged constitutional rights violations, Mrs. Taccino must establish the existence of a constitutional violation on the part of an employee or agent acting for the municipality. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (finding that jury's conclusion that a police officer inflicted no constitutional injury on the plaintiff removed any basis for municipal liability against city and members of police commission); Temkin v. Frederick Cnty. Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991) (finding that § 1983 claim of inadequate training or supervision could not be established

---

[12] Mrs. Taccino also alleges claims for obstruction of justice against Clem, Lindsey, and Beeman (Counts XV, XVIII, and X, respectively). Obstruction of justice is not a cognizable civil claim. See Kumar v. Mahone, No. GLR-21-735, 2022 WL 279798, at *8 (D.Md. Jan. 31, 2022) (citing cases). Accordingly, Mrs. Taccino fails to state a claim for obstruction of justice and the Court will dismiss Counts X, XV, and XVIII.

without a finding of a constitutional violation on the part of the person being supervised); see also Dawson v. Prince George's Cnty., 896 F.Supp. 537, 540 (D.Md. 1995). Second, she must show that any constitutional violations were proximately caused by a policy, custom, or practice of the municipal Defendants. See Monell v. Dep't of Social Servs. of N.Y., 436 U.S. 658, 691, 694 (1978). Municipal policy arises from written ordinances, regulations, and statements of policy, id. at 690; decisions by municipal policymakers, Pembaur v. Cincinnati, 475 U.S. 469, 482–83 (1986); and omissions by policymakers that show a "deliberate indifference" to the rights of citizens, see Canton v. Harris, 489 U.S. 378, 388 (1989).

The basis for Mrs. Taccino's claims against the municipal entities appears to be that they operate a police force and employ the State's Attorneys involved in her prosecution. (Compl. at 3). The mere operation of a police force and employment of prosecuting attorneys is not a viable basis for municipal liability. The Complaint, even when read generously, does not allege a policy, ordinance, or regulation that caused Mrs. Taccino harm. Therefore, the Court will also dismiss any claims against Cumberland and Allegany County. (See id. ¶¶ 12–26).

### III. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff Carol Taccino's Motion to Proceed in Forma Pauperis and will dismiss the Complaint. A separate Order follows. Entered this 28th day of April, 2022.

/s/
George L. Russell, III
United States District Judge